IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL PICCARI; FRANK KIELB and FKE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GTLO PRODUCTIONS, LLC; GTLO, LLC; PAUL HAMMOND and PAUL FARIELLO, <br><br> Defendants. | CIVIL ACTION <br> NO. 14-06701 |

**PAPPERT, J.**                                                                    **JUNE 24, 2015**

### MEMORANDUM

This case stems from a break up between members of "one of the greatest tribute bands in the history of the modern rock era"—"Get The Led Out." (Compl. ¶ 20, ECF No. 1.) Plaintiffs seek to recover their share of the profits earned by the band since they were allegedly unilaterally ousted from the group. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiffs have failed to state claims pursuant to the Lanham Act, 15 U.S.C. § 1501 *et seq*. Defendants also ask the Court to decline to exercise jurisdiction over the remaining state law claims. For the reasons that follow, the motion is granted and the case dismissed.

**I.    *Factual and Procedural Background*** 

In 2002, Plaintiff Paul Piccari ("Piccari") conceived the idea to form a band dedicated to playing the music of Led Zepellin, one of the world's most famous rock and roll bands. (*Id*. ¶ 9A.) Piccari named the group "Get The Led Out," and the band was comprised of Piccari and Defendants Paul Hammond ("Hammond") and Paul Fariello ("Fariello"). (*Id.*) Since the band's inception in 2002, Picarri has played an "indelible role in the continued success of the musical

1

group" as a "musician, arranger, performer, and valuable provider of creative and business advice." (*Id.* ¶¶ 10, 11.) Plaintiff FKE, Inc. ("FKE"), through Plaintiff Frank Kielb[1] ("Kielb"), likewise played an indelible role as the band's "personal manager, business manager, business advisor, and consultant." (*Id.* ¶ 22.) By 2003, "Get The Led Out" was performing live at venues in Philadelphia and West Chester, Pennsylvania. (*Id.* ¶ 9B.)

Prior to commencing live performances in 2003, the parties orally agreed that Piccari would receive a 22.5 percent proprietary interest and FKE a 10 percent proprietary interest in "Get The Led Out" as well as the gross revenue related to those interests. (*Id.* ¶ 9C.) The parties also agreed that Piccari would receive his fair share of 22.5 percent of the gross profits earned by "Get The Led Out" and FKE would receive 10 percent of gross profits[2] earned by "Get The Led Out." (*Id.* ¶¶ 12, 19.) Both Piccari and Kielb are co-owners[3] of the trade name, trade dress, and trademark "Get The Led Out." (*Id.* ¶¶ 10, 21.)

The Defendants forced Piccari out of the band[4] and, on October 24, 2011, they unilaterally terminated FKE and Kielb. (*Id.* ¶¶ 13, 24.) "Since their ouster, Plaintiffs have not received, and defendants refuse to make, any payments based on their interests in the band. (*Id.* ¶¶ 15, 26.)

Plaintiffs allege breach of oral contract, promissory estoppel, unjust enrichment, breach of fiduciary duty, breach of implied-in-fact agreement, accounting, constructive trust, and violations

---

[1] Plaintiffs do not specifically describe Kielb's role in the band. It appears that Kielb acted as the band's manager through FKE. (*See* Compl. ¶¶ 22-26.) Kielb is also a co-owner of the trademark at issue in this case through an assignment by Piccari. (*Id.* ¶ 76.)

[2] Plaintiffs also assert that FKE was entitled to receive a 10 percent share of gross revenues earned by the band. (Compl. ¶ 23.) Because Plaintiffs first alleged that FKE was entitled to receive a share of the gross profits and it is alleged that Piccari was entitled only to gross profits, the Court assumes FKE's interest was measured by the band's profit and not its revenue.

[3] Plaintiffs assert that documents relating to the trademark are attached to the complaint as Exhibits A and B. There are, however, no exhibits attached to the complaint.

[4] Plaintiffs do not state when this happened, but Defendants contend that it occurred in February 2010. (Defs.' Mot. Dismiss, Ex. D.)

of the Lanham Act.  Defendants contend that Plaintiffs have failed to state a claim under the Lanham Act and ask the Court to decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims.  The Court now considers Defendants' motion, Plaintiffs' response, (ECF No. 16), and Defendants' reply.[5]  (ECF No. 17.)

## II.     Legal Standard

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)."  *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing the pleader is entitled to relief, "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The court must "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff."  *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible if it states "enough factual matter (taken as true) to suggest

---

[5]     Twenty-two days after Defendants filed their reply, Plaintiffs filed a sur-reply without seeking leave to do so.  The Court's policies and procedures prohibit the filing of a sur-rely brief "unless leave to file is granted upon motion of a party."  *See* http://www.paed.uscourts.gov/documents/procedures/pappol.pdf.  Plaintiffs assert in their sur-reply that they "should be afforded leave of Court to remedy any technical pleading insufficiencies."  (Sur-Reply 4, ECF No. 18.)  In doing so, Plaintiffs have ignored the well-established procedure for requesting leave to amend.  *See U.S. ex rel Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a).").  Plaintiffs will not be afforded leave to amend their complaint.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) ("[I]n ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint.").

the required element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). A motion to dismiss will be granted when the factual allegations in the complaint are insufficient "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56.

## III. *Discussion*

Defendants move to dismiss Plaintiffs' Lanham Act claims on three grounds: (1) the public record on file with the United States Patent & Trademark Office (USPTO) demonstrates that Plaintiffs are no longer owners of the "Get The Led Out" trademark[6], and thus lack standing to assert trademark infringement claims pursuant to the Lanham Act; (2) assuming Plaintiffs are still owners of the trademark, they cannot allege a trademark infringement claim against the Defendants, who are co-owners of the trademark; and (3) Plaintiffs fail to allege the requisite elements of a trademark infringement action.

Defendants contend that when Piccari was ousted from the band, they paid him $3,016.94 in exchange for leaving the band-joint venture and releasing all interest in the band-joint venture and its assets. Defendants further contend that Piccari's assignment to Kielb of a portion of his interest in the mark after his ouster was null and void. (Defs.' Mot. Dismiss 6-7.)[7] Plaintiffs argue that the USPTO's records reflect both Piccari's ownership interest and his assignment to Kielb. (Pls.' Opp'n Mot. Dismiss 6.) At this stage in the litigation, the Court must take the Plaintiffs' factual allegations as true, and the documents Defendants have provided in support of

---

[6] The Court uses the word "trademark" to be consistent with the parties' use of the term. However, the Court recognizes that "Get The Led Out" is registered as, and most likely is, a service mark as it is a symbol used "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services." 15 U.S.C. § 1127. Furthermore, the Court may refer to "Get The Led Out" solely as "the mark" because this term "includes any trademark, service mark, collective mark, or certification mark." *Id.*

[7] As Defendant's motion is not paginated, page citations reflect the page numbers assigned through the Court's CM/ECF system.

their position are ambiguous at best. The Court accordingly assumes that Plaintiffs have an ownership interest in the "Get The Led Out," mark number 4065612, dated October 10, 2006.[8]

Second, Defendants' ownership of the "Get The Led Out" trademark is uncontested. Plaintiffs describe themselves as "co-owners of the trademark 'Get The Led Out.'" (*See* Compl. ¶¶ 10, 21, 72, 76.) The current USPTO records reflecting "Get The Led Out" trademark provided by Plaintiffs lists the owners as "(REGISTRANT) Paul Hammond[,] Paul Fariello, USA, Paul Piccari, USA, Paul Hammond, USA, and Adam Ferraioli[9], USA JOINT VENTURE PENNSYLVANIA 112 e. Ninth st Bridgeport PENNSYLVANIA 19405." (Pls.' Opp'n Mot. Dismiss, Ex. B.). Defendants contend that their joint ownership prohibits Plaintiffs from stating a trademark infringement claim under the Lanham Act. (Defs.' Mot. Dismiss 7-8.)

The parties have not identified and the Court is unaware of any cases within the Third Circuit that have considered whether an owner may state a trademark infringement claim against a co-owner. Accordingly, the Court turns to the language of the Lanham Act to discern whether such a claim is permitted. The pertinent section provides:

> Any person who shall, without the consent of the registrant–
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles

---

[8] Plaintiffs identify the trademark over which they claim an ownership interest only as the "Get The Led Out" trademark in the complaint. The documents attached to Plaintiffs' brief in opposition to Defendants' motion to dismiss demonstrate that it is indeed the "Get The Led Out" trademark, No. 4065612, dated October 10, 2006. *See In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("A document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (citation omitted).

[9] Adam Ferraioli has not been named as a defendant.

> or advertising intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertisement of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1). Though the language of this section, with its reference only to the registrant[10], provides little guidance as to whether an owner may bring a cause of action against a co-owner for trademark infringement, the Supreme Court has observed that "[r]egistration of a mark under § 2 of the Lanham Act, 15 U.S.C. § 1052, enables the *owner* to sue an *infringer* under § 32, 15 U.S.C. § 1114." *Wal-Mart Stores, Inc. v. Sarama Bros., Inc.*, 529 U.S. 205, 209 (2000) (emphasis added). This distinction between an "owner" and an "infringer" is consistent with the statute's expressly stated purpose:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127; *see also POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014) (explaining that "it requires little guesswork to ascertain Congress' intent regarding the [Lanham Act]" because "Congress included a detailed statement of the statute's purposes.") (citation and

---

[10] The term registrant "embraces the legal representatives, predecessors, successors and assigns of such [registrant]." 15 U.S.C. § 1127.

internal quotation marks omitted).  The purpose of the Lanham Act is thus to protect both the public and the providers of goods and services—*i.e.* owners of trademarks—from imitators seeking to capitalize on the owner's hard-earned goodwill.  *See Aamco Transmission, Inc. v. Smith*, 756 F. Supp. 225, 228 (E.D. Pa. 1991) ("The Lanham Act, in contrast, establishes marketplace rules governing the conduct of parties not otherwise limited.").  A co-owner with an equal right to use the trademark cannot be an imitator at whom this statute is directed.

"The law of trademark protects *trademark owners* in the exclusive use of their marks when use by another would be likely to cause confusion."  *Interpace Corp. v. Lapp*, 721 F.2d 460, 462 (3d Cir. 1983) (emphasis added); *see also Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 711 (3d Cir. 2004) ("The Lanham Act defines trademark infringement as use of a mark so similar to that of a prior user as to be likely to cause confusion, or to cause mistake, or to deceive.") (citations and internal quotation marks omitted).  "A likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark."  *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 211 (3d Cir. 2000). Because co-owners are naturally associated with the same source, in this instance the band "Get The Led Out," use by a co-owner cannot create confusion as to the source among consumers. The purpose of the Lanham Act is not furthered by permitting co-owners to lodge trademark infringement claims against one another premised upon a co-owner's use of the mark.

Another district court has reasoned that "an action for trademark infringement by a co-owner . . . is best understood as an action for an accounting that arises under state contract law, not under the Lanham Act."  *Derminer v. Kramer*, 406 F. Supp. 2d 756, 758 (E.D. Mich. 2005). In *Derminer*, a songwriter's heirs alleged that the defendants, other members of the same band

and co-owners of the trademarks at issue, had diluted the songwriter's "MC5" trademark or failed to account for revenues associated with the trademark. 406 F. Supp. 2d at 757. The court concluded that "[a]n owner does not infringe upon his co-owner's rights in a trademark by exercising his own right of use. Likewise, he does not dilute those rights by exercising his own right of use. These legal claims are properly understood as an action for an accounting arising under state law." *Id.* at 759. Plaintiffs distinguish *Derminer*, which dealt with a claim of trademark dilution, by pointing out that Plaintiffs' claims are for trademark infringement.[11] (Pls.' Opp'n Mot. Dismiss 9.) The court's holding in *Derminer*, however, rested upon the general premise that "an owner does not infringe upon his co-owner's rights in a trademark by exercising his own right of use." *Derminer*, 406 F. Supp. 2d at 759.

      Plaintiffs also contend that "[c]ase law is replete with Lanham Act cases—federal subject matter jurisdiction accepted—involving one trademark co-owner pitted against another." (Pls.' Opp'n Mot. Dismiss 9.) In support of this contention, Plaintiffs cite only *Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941 (D. Colo. 1988). In *Durango Herald*, the plaintiff and the defendant entered into a joint venture to publish annual telephone directories. *Id.* at 943. As the joint venture was dissolving, both "parties indicated an intent to publish competing directories in the markets formerly served by the joint venture." *Id.* at 944. Prior to the dissolution, the defendant began publishing a directory that the plaintiff believed infringed upon the trademark held by the joint venture. *Id.* Unlike in this case, the parties were not co-owners of the trademark with equal and unfettered rights of use; rather, the joint venture held the trademark and both parties, as members of the joint venture, were entitled to use the mark in accordance with a Publication

---

[11]     Plaintiffs did not identify or describe the claims they alleged pursuant to the Lanham Act in Counts XI and XII. Defendants, in their motion to dismiss, described the claims as a trademark infringement claims. (Defs.' Mot. Dismiss .) Plaintiffs likewise characterized their claims as trademark infringement claims in their response to Defendants' motion to dismiss. (Pls.' Opp'n Mot. Dismiss 10.)

Agreement. *Id.* The defendant's use exceeded this authorization, and thus infringed upon the joint venture's trademark. *Id.* at 946.

A leading trademark treatise broadly concludes that "[w]hen parties are co-owners of a mark, one party cannot sue the other for infringement. A co-owner cannot infringe the mark it owns." 2 J. McCarthy on Trademarks and Unfair Competition § 16:40 (4th ed. 2015). The Court has been unable to identify any cases in which a plaintiff stated a trademark infringement claim against a defendant co-owner with unlimited and equal rights to the trademark.[12] Indeed, "in a typical lawsuit, the plaintiff is the owner of a trademark who permitted defendant to use the trademark pursuant to a contract," and the defendant subsequently used the trademark in an unauthorized manner. *See Mother Waddles Perpetual Mission, Inc. v. Frazier*, 904 F. Supp. 603, 607 (E.D. Mich. 1995). There are many such cases. *See, e.g.*, *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371 (3d Cir. 1992); *ITT Industries, Inc. v. Wastecorp. Inc.*, 87 F. App'x 287 (3d Cir. 2004); *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706 (M.D. Pa. 2013); *Dunkin' Donuts, Inc. v. Liu*, No. 00-cv-3666, 2000 WL 1868386 (E.D. Pa. Dec. 21, 2000).

This dispute, like that in *Derminer*, is premised solely upon the allegations that some owners, *i.e. Plaintiffs*, were prohibited from enjoying the profits earned through the use of the trademark.[13] This is not a case in which the Plaintiffs are seeking to protect a trademark from unscrupulous use by pirates or cheats or asking the Court to enjoin the unauthorized use of their

---

[12]   The Court found only one other case that contemplated an infringement claim by an owner against another owner. *See Reynolds v. Banks*, No. 12-cv-11664, 2012 WL 2524332, at *4-5 (E.D. Mich. June 29, 2012) (denying the plaintiff's request for a preliminary injunction pursuant to a trademark infringement theory because he conceded that the defendant was a co-owner of the trademark, and thus he "proffered insufficient evidence that he is likely to succeed in establishing that he currently enjoys exclusive rights to use the mark.").

[13]   Plaintiffs seek to distinguish their case further by focusing on the Defendants' unilateral expulsion of the Plaintiffs from the band, which they contend prohibited them from performing services in furtherance of the "Get The Led Out" trademark. (Pls.' Opp'n Mot. Dismiss 9.) It is unclear, however, how Plaintiffs' removal from the band prevented them from utilizing the trademark and how that conduct infringed upon their trademark. Plaintiffs provide no law or argument in support of this position.

trademark by a former licensee.  Counts XI and XII are properly understood as actions for an accounting arising under state law.  *See Derminer*, 406 F. Supp. 2d at 759.  They do not arise under the Lanham Act.

In an attempt to salvage their claims, Plaintiffs describe the existence of a second "Get The Led Out" trademark, which Defendants allegedly registered on December 6, 2011 and was assigned registration number 4065612.  (Pls.' Opp'n Mot. Dismiss 9.)  According to Plaintiffs, "[i]t is uncontroverted that plaintiffs are not co-owners of the 'Get The Led Out' trademark for Registration No. 4065612."  (*Id.* at 10.)  Plaintiffs argue that the Defendants' decision to file this second mark "improperly exclude[s] plaintiffs from their co-ownership interests in that trademark registration," which entitles them to proceed with their trademark infringement claims against Defendants.  (*Id.* at 9-10.)  Despite these new allegations, the complaint describes only one trademark and repeatedly states that Plaintiffs are co-owners of that mark.  (*See* Compl. ¶¶ 10, 21, 72, 76.)  The complaint cannot be read to allege a trademark infringement claim based on a separate, competing trademark held exclusively by Defendants, and Plaintiffs cannot amend their complaint by way of a brief in opposition to a motion to dismiss.  *Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

In their third argument, Defendants contend that Plaintiffs failed to allege the requisite elements of a trademark infringement claim.  "To establish trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, a plaintiff must prove that (1) the mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark is likely to create confusion."  *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008).  Plaintiffs have alleged no facts in support of the third element.  Indeed, Plaintiffs allege only that they are "co-owners" of the trademark "Get The Led Out," (Compl. ¶¶ 72, 76), and that

Defendants violated the Lanham Act by ousting Plaintiffs from the band and withholding Plaintiffs' percentage of the revenue generated by use of the mark. (Compl. ¶¶ 73, 77.) These allegations are insufficient to state plausible trademark infringement claims against the Defendants.

Plaintiffs rely solely on 28 U.S.C. § 1338 to establish the Court's subject matter jurisdiction. Section 1338 provides "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." Because Plaintiffs have failed to state a claim "arising under" the Lanham Act, the Court lacks subject matter jurisdiction. *See Aamco Transmissions, Inc.*, 756 F. Supp. at 228 (dismissing claims alleged pursuant to the Lanham Act for trademark infringement for lack of subject matter jurisdiction because the claims were "essentially a contract dispute between a franchisee and a franchisor" which was "not, ultimately, a case of either the franchisor or the franchisee attempting to protect a trademark from unscrupulous use in the marketplace."); *Premier Comp. Solutions LLC v. Workwell Physical Med., Inc.*, No. 10-cv-1117, 2010 WL 4342247, at *2 (W.D. Pa. Oct. 27, 2010) ("The Court, after careful review of the Amended Complaint, concurs that if no viable Lanham Act claim exists, the remaining pendent state-based claims must be dismissed since this Court will be divested of subject matter jurisdiction."). The complaint is accordingly dismissed.[14]

An appropriate order follows.

                                                        */s/ Gerald J. Pappert*
                                                        GERALD J. PAPPERT, J.

---

[14] Plaintiffs are free to reassert their state-law claims against Defendants in state court, and may explore their transfer right under 42 Pa. C.S.A. § 5103(b) as necessary.

Case 2:14-cv-06701-GJP   Document 20   Filed 06/24/15   Page 12 of 12